AO 106 (Rev. 04/10) Application for a Search Warrant

## UNITED STATES DISTRICT COURT
### for the
Western District of Arkansas
Texarkana Division

*US DISTRICT COURT*
*WESTERN DIST ARKANSAS*
*FILED*
*OCT 29 2018*
*DOUGLAS F. YOUNG, Clerk*
*By*
*Deputy Clerk*

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) Case No. 4:18-cm-12 |
| EMACHINES E525-2632 LAPTOP | ) |
| COMPUTER BEARING SERIAL NUMBER | ) |
| LXN7502171013103D51601 | ) |

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*: an E525-2632 laptop computer bearing serial number LXN7502171013103D51601, seized from 103 Mercer Street, Horatio, Arkansas 71842, maintained as evidence at Homeland Security Investigations Office in the Western District of Arkansas, hereinafter referred to as the "Device" and more particularly described on Attachment "A".

Located in the Western District of Arkansas, there is now concealed: See Attachment "B."

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ■ evidence of a crime;

- ☐ contraband, fruits of crime, or other items illegally possessed;

- ☐ property designed for use, intended for use, or used in committing a crime;

- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 554 | Smuggling Goods from the United States |
| 18 U.S.C. § 924(c) | Possession of a Firearm in Furtherance of a Drug Trafficking Offense |
| 21 U.S.C. §§ 841(a)(1), 843(b) and 846 | Distribution and Possession with Intent to Distribute Controlled Substances; Conspiracy to Commit those Offenses; and Using a Communication Facility to facilitate those Offenses |

The application is based on these facts:

- ■ Continued on the attached sheet.

- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jeremy T. Ridenour, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 29th, 2018.

_____
*Judge's signature*

City and state:  Texarkana, Arkansas

Barry A. Bryant, Chief United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: EMACHINES E525-2632 LAPTOP COMPUTER BEARING SERIAL NUMBER LXN7502171013103D51601 | Case No. ___4:18-cm-12___<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Jeremy T. Ridenour, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the forensic examination of property, namely an emachines E525-2632 laptop computer bearing serial number LXN7502171013103D51601, which is currently in the possession of Homeland Security Investigations (hereinafter referred to as HSI), and the extraction from that property of electronically stored information as described in Attachment B. This laptop computer, hereinafter the "Device," was seized by HSI on March 6, 2018, pursuant to a Search and Seizure Warrant issued by the United States District Court, Western District of Arkansas, for the premises located at 103 Mercer Street, Horatio, Arkansas 71842.

2.      I am a Special Agent with HSI, and have been since its creation on March 1, 2003. Previously, I was a Border Patrol Agent, and then a Special Agent with the Immigration and Naturalization Service.

1

3.      Included in my responsibilities as a federal law enforcement officer is conducting investigations relating to violations of Title 21 U.S.C. §§ 841, 843, and 846, prohibiting distribution and possession with intent to distribute controlled substances, conspiracies to commit those offenses, and use of a communication facility to facilitate those offenses. My responsibilities also include conducting investigations relating to violations of Title 18 U.S.C. §§ 554, and 924(c), prohibiting the exportation of merchandise from the United States contrary to law or regulation, and possession of a firearm in furtherance of a drug trafficking crime. I have participated in and conducted investigations involving federal export, firearms, and controlled substance distribution violations, entailing the execution of search warrants, analysis of electronically stored information, and various other investigative tools and methods.

4.      Through these investigations, my training and experience, and conversations with other law enforcement officers, I have become familiar with the methods used by drug traffickers to obtain, manufacture, smuggle, and distribute controlled substances, collect and launder drug trafficking-derived proceeds, communicate with organizational members, and utilize firearms in furtherance of their criminal activity.

5.      The facts contained in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      The requested warrant would authorize the forensic examination of the Device for the purpose of identifying and seizing electronically stored evidence of the distribution and possession with intent to distribute controlled substances, unlawful use of a communications facility, and conspiracy in violation of Title 21, U.S.C. §§ 841(a)(1), 843(b), and 846,

electronically stored evidence of the unlawful exportation of merchandise in violation of Title 18 U.S.C. § 554, and electronically stored evidence of the receipt, possession, and transfer of firearms in furtherance of a drug trafficking crime, in violation of Title 18 U.S.C. § 924(c). The electronically stored evidence sought is described more particularly in Attachment B to this Affidavit.

## TECHNICAL TERMS

7.      Based on my training and experience, I use the following technical terms to convey the following meanings:

     a.      **Internet**: The internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the internet, connections between devices on the internet often cross state and international borders, even when the devices communicating with each other are in the same state.

     b.      **Facebook**: Facebook is a free-access social networking internet website that can be accessed at http://www.facebook.com. Facebook users can establish accounts and then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

8.      Based on my training, experience, and research, I know that the Device has capabilities that allow it to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## INFORMATION REGARDING THE USE OF COMPUTERS IN DRUG TRAFFICKING AND RELATED CRIMES

9.      Based upon my training, experience, and participation in other controlled substance and firearms investigations, as well as the knowledge and experience of other law enforcement officers with whom I have worked, I know:

a.      That it is common for drug traffickers (often referred to as dealers or distributors) to maintain records relating to the ordering, transportation, sale and distribution of controlled substances, and to the collection, transfer and expenditure of payments therefor or proceeds thereof.  That the aforementioned records are maintained where the traffickers have ready access to them, including their residences, businesses, vehicles, storage units and/or other locations over which they maintain dominion and control.

b.      That drug traffickers often utilize electronic equipment, such as computers to generate, transfer, count, record and/or store the information described in the preceding paragraph.

c.      That drug traffickers commonly maintain electronic equipment, such as computers, which contains the names, telephone numbers, addresses and/or electronic email addresses of others involved in drug trafficking, whether within the same drug trafficking organization or separately;

d.      That drug traffickers often take or cause to be taken photographs and videos of themselves, their associates, their assets and their products. That drug traffickers usually maintain these photographs and videos in their possession, often on computers, in locations over which they maintain dominion and control;

e.      That drug traffickers often travel, or pay and arrange for others to travel, in furtherance of their drug trafficking activities, including traveling to transport drugs and to transport currency derived from and/or related to the drug trafficking activities. Drug traffickers who travel, or who contract others to travel on their behalf, often communicate with their sources of supply or customers prior to, during and after their travel.  Drug traffickers typically leave records of these communications in various places, including, but not limited to, their cellular telephones, computers, text messaging devices, telephone answering machines, and handwritten notes.  These communication records are commonly found in a trafficker's residence, or other locations over which they maintain dominion or control.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

10.     Based on my knowledge, training, and experience, I know that electronic devices, such as laptop computers, can and often do store information for long periods of time.  Similarly,

things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

11.     There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

a.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.     Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.     Similarly, files that have been viewed via the internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

12.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.     How the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

13.     *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

6

14.     *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## PROBABLE CAUSE

15.     On December 15, 2015, the South Central Arkansas Drug Task Force and other law enforcement agencies executed a search and seizure warrant issued by the Circuit Court of Sevier County, Arkansas for Jorge Preciado-Arredondo's residence located at 308 Isabell, in Horatio, Arkansas.   The Search and Seizure Warrant specified, among other items, firearms, cell phones and currency as items to be seized.

16.     Upon executing that Search and Seizure Warrant, participating law enforcement officers located and seized, among other items, a Rock Island Arms 9mm pistol bearing serial number RIA1606992, a Colt M4 Carbine .22 caliber rifle bearing serial number BP094789, a ballistic vest, four cellular telephones, and currency.

17.     On April 12, 2016, the South Central Arkansas Drug Task Force applied to the Circuit Court of Sevier County, Arkansas, for a warrant authorizing the search of the four cellular telephones seized from Jorge Preciado-Arrendondo's residence on December 15, 2015.   The requested warrant was granted.

18.     Information retrieved during the search of one of those cellular telephones, an Apple iPhone 6, indicates that it is assigned telephone number 870-279-4475.   Three images retrieved from this cellular telephone depict a juvenile male with a rifle substantially similar in appearance to the rifle seized from Jorge Preciado-Arrendondo's residence on December 15, 2015.   Another image retrieved from the iPhone 6 depicts a male similar in appearance to Yeyserh

Navarrete-Martinez in a vehicle with a rifle similar in appearance to the rifle seized from Jorge Preciado-Arrendondo's residence on December 15, 2015.

19.     I have obtained subscriber information from AT&T, Inc., which reveals that the subscriber for cellular telephone number 870-279-4475 from March 18, 2011, to December 19, 2015, is Elizabeth Navarrete of Horatio, Arkansas.  Elizabeth Navarrete is the wife of Jorge Preciado-Arrendondo.   Telephone number 870-279-4475 was given as Jorge Preciado-Arredondo's phone number during his June 9, 2015, booking into the Sevier County, Arkansas jail.

20.     In the same iPhone 6, the telephone number 870-279-3975 is saved as a contact entitled "Yessy" and as a contact entitled "Yeyserh."  I have obtained subscriber information and toll records for telephone number 870-279-3975 from AT&T, Inc.  That information reveals that the subscriber for that number, for the period from December 15, 2010, to as late as July 31, 2017, is also Elizabeth Navarrete of Horatio, Arkansas.  Department of Homeland Security records indicate that Yeyserh Navarrete-Martinez and Elizabeth Navarrete are siblings.  Telephone number 870-279-3975 was also listed as Yeyserh Navarrete-Martinez's phone number during his July 12 and July 24, 2013, bookings at the Sevier County, Arkansas jail.

21.     An SMS message located in the above-referenced Apple iPhone 6, dated December 5, 2015, contains the text, "Juan Abelardo Gallardo Mtz replied to your comment on Triple-X Motorsports & Outdoors – RekjavicXXX's photo.  https://fb.com/l/25yojH6RTiVnXLs Hell no Reply with your comment or "like"."   This message is located in an "inbox" and has been designated as deleted.  This indicates that the person using the iPhone 6 assigned the number 870-279-4475 was, at least as of that date, not the person using the Facebook account with username

8

"Juan Abelardo Gallardo Mtz." It also indicates a link between the person using the above-referenced iPhone 6 and the person using that Facebook account.

22.     In or about November 2016, upon learning of the seizure of the above-described firearms from Jorge Preciado-Arredondo, I requested a Firearms Trace for each firearm from the Bureau of Alcohol, Tobacco, Firearms and Explosives.

23.     On December 9, 2016, the Bureau of Alcohol, Tobacco, Firearms and Explosives provided me with a Firearms Trace Summary indicating that the above-referenced Rock Island Arm 9mm pistol, bearing serial number RIA1606992, was originally purchased by a named resident of Wake Village, Texas, on February 11, 2015, from the Gander Mountain Store in Texarkana, Texas. This trace summary also indicates that the pistol was manufactured in the Philippines. On December 13, 2016, I interviewed this purchaser and learned that he/she had sold the pistol to a named resident of New Boston, Texas. On December 14, 2016, I spoke via telephone with this resident of New Boston, Texas, and he/she advised me that he/she had sold the pistol to a named individual, hereafter D.A., of DeQueen, Arkansas, on an unknown date. On December 19, 2016, I interviewed D.A. I showed D.A. a photograph of the above-described Rock Island pistol. D.A. immediately recognized the pistol in the photograph, and told me that he/she had sold it to an adult male in DeQueen, Arkansas. D.A. provided me with screenshots of his/her Facebook messenger communication with the person to whom he/she sold the pistol. In those communications, D.A. arranged for the sale of the pistol on April 21, 2015, to an individual utilizing the Facebook account with the username of "Juan Abelardo Gallardo Mtz." The profile picture used for that account in the communications provided by D.A. contains the words "NUEVA GENERACION" and bears a photograph of the back of an individual with a long-arm firearm, with the individual's right arm raised above his head. In the communication, the

individual utilizing the Facebook account with the username of "Juan Abelardo Gallardo Mtz" indicates that he or she was in Horatio, Arkansas, was interested in purchasing the pistol, and would meet D.A. at a location in DeQueen, Arkansas, after going to an automated teller machine.

24.    On December 9, 2016, the Bureau of Alcohol, Tobacco, Firearms and Explosives also provided me with a Firearms Trace Summary indicating that the above-referenced Colt M4 Carbine .22 caliber rifle bearing serial number BP094789 was manufactured in Germany and originally purchased by a named individual, hereafter C.W., of Gillham, Arkansas, on February 10, 2013.  On December 19, 2016, I spoke with C.W., who advised that he/she had sold the above-described rifle to a Hispanic male in Gillham, Arkansas, after posting it for sale on a "Facebook swap shop" page.  C.W. provided me with screenshots of his/her Facebook group page communication with the purchaser of the rifle.

25.    I have reviewed the Facebook group page communications provided by C.W., which contain a photograph of the above-described rifle and indicate that, on February 3, 2015, he/she made arrangements for the sale of that rifle on the following day to an individual utilizing the Facebook account with a username of "Juan Abelardo Gallardo Mtz."  The profile picture for the Facebook account of "Juan Abelardo Gallardo Mtz" in the communications with C.W. is the same profile picture as that of the Facebook account with which D.A. communicated, when selling the Rock Island 9mm pistol.  In the communications provided by C.W., the individual utilizing the Facebook account with username of "Juan Abelardo Gallardo Mtz" indicates that he or she lived ten minutes from DeQueen, Arkansas, and requested to receive a text message at 870-279-3975 the following day.  That number is the same number attributed to Yeyserh Navarrete-Martinez during his Sevier County bookings and is the same number assigned to contact "Yeyserh" in the above-referenced iPhone 6.

10

26.     Toll records for telephone number 870-279-3975 provided by AT&T, Inc., indicate sixteen contacts on February 4, 2015, likely text messages, between telephone number 870-279-3975 and the telephone number from which C.W. contacted me on December 19, 2016.  These toll records also indicate numerous contacts between telephone number 870-279-3975 and telephone number 870-279-4475.

27.     On or about January 11, 2017, the public portion of the Facebook account with username "Juan Abelardo Gallardo Mtz" contained the same profile picture bearing the words "NUEVA GENERACION" seen in the communications provided to me by D.A. and C.W., relating to the sale of the above-described firearms.  The public portion of that Facebook account also contains a photograph of a young male inside a vehicle near what appears to be an O'Reilly Auto Parts store.  This building and the surrounding tree line in the photograph appear to me to be consistent with the O'Reilly Auto Parts store located in DeQueen, Arkansas.  This public portion of the Facebook account with username of "Juan Abelardo Gallardo Mtz" also contains photographs of the young male and an adult male I believe to be Yeyserh Navarrete-Martinez.  The public portion of that Facebook account also lists various "friends" with a last name of Navarrete, including Elizabeth Preciado Navarrete.

28.     On January 25, 2017, I submitted a preservation request to Facebook for the account associated with the username of "Juan Abelardo Gallardo Mtz."

29.     On February 21, 2017, information obtained using Facebook.com indicated that the account with the username of "Juan Abelardo Gallardo Mtz" is assigned Facebook identification number 100002087038003.

30.     On April 7, 2017, the United States District Court for the Western District of Arkansas, Texarkana Division, issued a Search and Seizure Warrant for information associated with Facebook identification number 100002087038003.

31.     On April 21, 2017, Facebook provided me with a response to the Search and Seizure Warrant for information associated with Facebook identification number 100002087038003, revealing that "m.chino44@yahoo.ca" and "yeyserh.mtz@facebook.com" are email addresses registered to the account, that 870-279-3975 is a cellular telephone number associated with the account, that the gender of the account holder is identified as male, and that his date of birth is November 12, 1990.  Department of Homeland Security records indicate that this is the date of birth of Yeyserh Navarrete-Martinez.

32.     The information provided by Facebook also contains a correspondence occurring on March 1 and 2, 2016, negotiating the purchase of a rifle, magazines, ammunition, and a case by the user of the Facebook account with identification number 100002087038003 from the user of another Facebook account for $800.  Included in this correspondence are two photographs of an apparent AK-47 rifle.  During the correspondence, the user of the Facebook account with identification number 100002087038003 asks if the seller can provide a "BOSale with your phone number and info".  The correspondence concludes on March 2, 2016, at approximately 5:00 p.m. Central Standard Time (CST), with the seller attempting to locate the user of the Facebook account with identification number 100002087038003 at the agreed meeting location, the Tractor Supply store in Texarkana.     The user of the Facebook account with identification number 100002087038003 had indicated that he/she would be buying dog food at this location and requested to meet there. On July 7, 2017, I observed Yeyserh Navarrete-Martinez walk out of the

12

Tractor Supply store in DeQueen, Arkansas, with a large bag of apparent dog food and place it in the bed of his pickup truck.

33.     The information provided by Facebook also contains a correspondence occurring on April 19, 2016, between the user of the Facebook account with identification number 100002087038003 and the user of another Facebook account who sought to sell a rifle, ammunition, and related items.  Included in this correspondence are four photographs of an apparent AK-47 rifle.  Although the user of the Facebook account with identification number 100002087038003 asked the user of the other Facebook account, "You still have this Ak for sale?", and requested additional photographs, there is no indication from the information provided by Facebook that a transaction occurred.

34.     Information I have obtained from Midway USA, a shooting, hunting, and outdoor products retailer, reveals that Yeyserh Navarrete, date of birth November 12, 1990, with a telephone number of 870-279-3975 and an e-mail address of m.chino44@yahoo.ca, and having addresses of P.O. Box 564 and 103 Mercer Street, Horatio, Arkansas 71842, has placed 17 orders for firearms parts or accessories from March 2, 2016, to December 5, 2017, with a total payment amount of $3,071.  Payment for each of these orders was made via credit card, and all but one has been identified by Midway USA as having been placed via the internet.  The item ordered from Midway USA by Yeyserh Navarrete on December 5, 2017, and to be shipped to 103 Mercer Street, Horatio, Arkansas 71842, is described as as: Sightmark LoPro Weapon Light White LED with Green Laser Sight Picatinny-Style Mount Flat Dark Earth.  The "Grand Total" amount for this item was $150.  Another item ordered from Midway USA by Yeyserh Navarrete, described as a FAB Defense Handguard with Picatinny Rails AK-47 Polymer Black, has a reported invoice date and time of March 2, 2016, 9:57 p.m. CST.  Therefore, this order was placed approximately five hours

13

after the planned meeting between the user of the Facebook account with identification number 100002087038003 and the user of another Facebook offering an apparent AK-47 rifle for sale, as previously described.

35.     Information I have obtained from Sportsman's Guide, an outdoor and hunting gear retailer, reveals that Yeyserh Navarrete, with a telephone number of 870-279-3975, an address of P.O. Box 564, Horatio, Arkansas 71842, and an email address of m.chino44@yahoo.ca, placed an order for nine items described as Thermold 30rd AR-15 (appearing to myself to be a rifle magazine), on May 9, 2016, for a total payment amount of $95.89, and another order on May 11, 2016, for five items described as Tapco 30rd Ak-47 Mag (also appearing to myself to be a rifle magazine), for a total payment amount of $87.93.  Both payments appear to have been made via credit card.

36.     Information I have obtained from Raleigh Tactical Supply LLC, an outdoor sporting goods retailer, reveals that Yeyserh Navarrete, with a telephone number of 870-279-3975, an address of P.O. Box 564, Horatio, Arkansas 71842, and an e-mail address of m.chino44@yahoo.ca, placed an order on May 11, 2016, for five items described as PMAG 30 AK/AKM MOE, 7.62X39 Magazine, for a total payment amount of $79.44, which appears to have been made via credit card.  This information also indicates that Yeyserh Navarrete learned of the retailer through Amazon.

37.     Information I have obtained from Primary Arms, LLC, a firearms parts and optics retailer, reveals that Yeyserh Navarrete, with a telephone number of 870-279-3975, and addresses of P.O. Box 564 and 103 Mercer Street, Horatio, Arkansas 71842, placed an order on February 14,

2017, for an item described as EOTech EXPS3-0 Tan Holographic Sight, for a total payment amount of $645.49, which appears to have been made via credit card.

38.     Information I have obtained from BulkAmmo.com, a bulk ammunition vendor, reveals that Yeyserh Navarrete, with a telephone number of 870-279-3975, addresses of P.O. Box 564 and 103 Mercer Street, Horatio, Arkansas 71842, and an e-mail address of m.chino44@yahoo.ca, placed an order with the company via the internet on March 6, 2017, for items described as 1,000 rounds of 7.62x39mm Ammo by Tula – 122gr FMJ, for a total payment amount of $244.00, which appears to have been made via credit card.

39.     Information I have obtained from Samson Manufacturing Corporation, a firearms parts and accessories manufacturer, reveals that Yeyserh Navarrete, with a telephone number of 870-279-3975, addresses of P.O. Box 564 and 103 Mercer Street, Horatio, Arkansas 71842, and an email address of m.chino44@yahoo.ca, placed an order with the company via the internet on August 7, 2017, for an item described as an AR-15 Free Floating Rail Mid Length Piston System, 9" upper / 12" lower, for a total payment amount of $340.99, which appears to have been made via credit card.  Samson Manufacturing Corporation also provided a United Parcel Service tracking number for this purchase.

40.     I have queried the United Parcel Service website for this tracking number, and learned that the parcel was delivered in Horatio, Arkansas, on August 10, 2017, at 3:03 p.m., with the following text in the "Left At" field:  Met Customer Man.  HSI surveillance of 103 Mercer Street, Horatio, Arkansas 71854, on August 10, 2017, revealed the presence of an apparent UPS

15

delivery truck parked in the street in front of the residence at approximately 2:57 p.m. Central Daylight Time.

41.     Information I have obtained from Daniel Defense Incorporated, a firearms, firearms parts and accessories retailer, reveals that Yeyserh Navarrete, with addresses of P.O. Box 564 and 103 Mercer Street, Horatio, Arkansas 71842, placed an order with the company via the internet on or about October 2, 2017, for an item described as an M4A1 SOCOM URG FDE, for a total payment amount of $1,280, which appears to have been made via credit card.  The image associated with this item on the Daniel Defense Incorporated website appears to me to be a barrel assembly for a rifle.  Daniel Defense Incorporated also provided a FedEx confirmation printout for the tracking number attributed to this purchased item, which indicates that it was delivered on October 4, 2017, to 103 Mercer Street, Horatio, Arkansas 71842.

42.     On March 2, 2018, a Search and Seizure Warrant was issued by the United States District Court, Western District of Arkansas, for the premises located at 103 Mercer Street, Horatio, Arkansas 71842. Electronic devices were among the items identified as subject to seizure in Attachment B of this warrant. On March 6, 2018, special agents with HSI and law enforcement officers with the Sevier County, Arkansas Sheriff's Office and DeQueen, Arkansas Police Department executed this Search and Seizure Warrant.

43.     Upon executing the Search and Seizure Warrant, participating officers found Yeyserh Navarrete-Martinez to be the sole occupant of the residence.  The participating officers discovered and seized the Device, firearms, firearms parts, ammunition, $4,527 in United States currency, 435.4 grams of a substance later determined to be methamphetamine hydrochloride, 6.6534 grams of a substance later determined to be cocaine hydrochloride, and other items

pursuant to the Search and Seizure Warrant.  The Device is currently maintained as evidence by HSI within the Western District of Arkansas.

44.      One of the seized firearms, a loaded Glock pistol, was discovered within a few feet of the seized methamphetamine hydrochloride.

45.      After being advised of my identity as a federal agent, provided with a copy of the Search and Seizure Warrant, and advised of his Constitutional rights with a written and verbal Miranda warning, Yeyserh Navarrete-Martinez indicated that he understood his rights and agreed to answer my questions without a lawyer present.

46.      Yeyserh Navarrete-Martinez thereafter asked me if his internet service had been blocked, noting that he was unable to view a surveillance camera I observed mounted on the front porch of the residence.

47.      Yeyserh Navarrete-Martinez stated that his only source of income was the sale of methamphetamine, which he had been engaged in for the previous three to four years.  He admitted that he had recently purchased methamphetamine for the purpose of distribution and had sold one pound to an individual, and one ounce to another individual.

48.      Yeyserh Navarrete-Martinez stated that he had two operational firearms and ammunition in his residence, where he lived alone.  He also stated that he had purchased an "AK," which I understood to mean an AK-47 rifle, on Facebook from a man in Texarkana.  He said that he had received it from the seller at a Tractor Supply store.

49.      Based upon my investigation, experience and knowledge regarding distribution of controlled substances, I have probable cause to believe Yeyserh Navarrete-Martinez would have sent money and/or other property to the source of his purchases of controlled substances in states other than Arkansas and/or to foreign countries. Yeyserh Navarete-Martinez also told of instances

17

in which he had transferred firearms to others outside Arkansas, including outside the United States. Based upon my investigation, experience and knowledge regarding distribution of controlled substances and firearms, I have probable cause to believe he received and shipped firearms in interstate and/or foreign commerce. Yeyserh Navarrete-Martinez recounted two other instances in which he had transferred a firearm to other individuals.

50.     The Device found in his residence was capable of using the Internet. Navarrete-Martinez stated that his Internet access was not working and wanted to know if it had been blocked by law enforcement. Therefore, the Device not only was capable of accessing the Internet but his house had access to the Internet. As set forth above, Navarrete-Martinez used the Internet to facilitate his receipt and shipment of firearms in interstate and/or foreign commerce, including but not limited to using Facebook and other Internet sites. It is probable that Navarrete-Martinez accessed the Internet while in his home via the Device.

## REQUEST FOR SEALING

51.     I request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is not known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

## CONCLUSION

52.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Jeremy T. Ridenour, Special Agent
Homeland Security Investigations

Subscribed and sworn before me this 29th day of October, 2018.

Honorable Barry A. Bryant,
Chief United States Magistrate Judge

19

## ATTACHMENT A

1.      The property to be searched is an emachines E525-2632 laptop computer bearing serial number LXN7502171013103D51601, hereinafter the "Device."  The Device is currently maintained as evidence by HSI within the Western District of Arkansas.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.       All records on the Device described in Attachment A that relate to violations of

Title 21 U.S.C. §§ 841, 843, and 846, and Title 18 U.S.C. §§ 554, and 924(c), and involve

Yeyserh Navarrete-Martinez since January 1, 2013, including:

  a.   records, documents, programs, applications or materials, or evidence of the

       absence of same, sufficient to show address book or contact information,

       including all stored or saved telephone numbers;

  b.   records, documents, programs, applications or materials, sufficient to show instant

       and social media messages (such as Facebook, Facebook Messenger, Snapchat,

       FaceTime, Skype, and WhatsApp Messenger), SMS text, email communications

       or other text or written communications sent to or received from the Device;

  c.   types, amounts, and prices of drugs trafficked as well as dates, places, and

       amounts of specific transactions;

  d.   any information related to sources of drugs (including names, addresses, phone

       numbers, or any other identifying information);

  e.   Global Positioning System ("GPS") coordinates and other information or records

       identifying travel routes, destinations, origination points, and other locations;

  f.   all bank records, checks, credit card bills, account information, and other financial

       records;

  g.   evidence of who used, owned, or controlled the Device at the time the

       things described in this warrant were created, edited, or deleted, such as

       logs, registry entries, configuration files, saved usernames and passwords,

       documents, browsing history, user profiles, e-mail, e-mail contacts, chat and

       instant messaging logs, photographs, and correspondence;

h.  records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses;

i.  evidence of the presence or absence of software that would allow others to control the Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

j.  evidence of the attachment of other devices;

k.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device;

l.  evidence of the times the Device was used;

m.  passwords, encryption keys, and other access devices that may be necessary to access the Device;

n.  applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the Device or to conduct a forensic examination of it;

o.  records of or information about Internet Protocol addresses used by the Device;

p.  records of or information about the Device's internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses.